ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
CLERK, U.S. DISTRICT COURT
By ______ Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DORA SAUCEDO-FALLS,** **Plaintiff** | § § § | |
| **VS.** | § § | **CIVIL ACTION NO.** |
| **DAVID KUNKLE, RANDY HAMPTON, and THE CITY OF DALLAS, TEXAS,** **Defendants** | § § § | **3-05CV0730-N** |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

## INTRODUCTION

1. This is a civil action seeking money damages, declaratory and other legal and equitable relief to redress violations of Plaintiff's rights under the laws and Constitution of the United States. Plaintiff has been denied her rights to freedom from sex discrimination and equal protection of the law, because of the acts and omissions of the Defendants and their failure to comply with their respective constitutional and/or statutory duties to act without sexually discriminatory motives and to protect the liberty, property and equal protection of the rights of the Plaintiff.

## JURISDICTION

2. Jurisdiction over this action exists by virtue of 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 2201. Plaintiff's claims against David Kunkle, Randy Hampton and the City of Dallas, Texas arise pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States.

## VENUE

3. Defendants, David Kunkle, Randy Hampton and the City of Dallas, Texas are situated

within the judicial district of this Court, and all of the events complained of occurred within the judicial district of this Court.

**PLAINTIFF**

4. The Plaintiff is Dora Saucedo-Falls. The Plaintiff is a female resident of Ellis County, Texas and until November of 2004 was a Dallas Police Department Assistant Chief of Police.

**DEFENDANTS**

5. The Defendants are David Kunkle, Randy Hampton and the City of Dallas, Texas. Kunkle is sued in his individual and official capacity. Hampton is sued in his individual capacity. The City of Dallas, Texas is a subdivision of local Texas government and operates a Police Department headed by Defendant David Kunkle. All of the Defendants have acted under color of law. The City of Dallas by policy and/or custom does not effectively prohibit sex discrimination in employment and by policy and/or custom takes inadequate and/or no steps to protect female employees from acts of sex discrimination. The Defendants also refuse to provide a hearing to clear the Plaintiff's name from a false claim that the Plaintiff was "reluctant to investigate" claims of Police misconduct in the Narcotics Division. Because David Kunkle makes policy for the City of Dallas, all actions alleged herein are City of Dallas official policy or custom.

6. The Plaintiff is a forty-eight (48) year old female. The Plaintiff joined the Dallas Police Department in 1977. The Plaintiff made a rapid rise through the various ranks making first Corporal, then Sergeant and then Lieutenant. In 1996, the Plaintiff was promoted to Deputy Chief by former Police Chief Bennie Click. On November 30, 1999, the Plaintiff was promoted to Assistant Chief by former Police Chief Terrell Bolton.

7. The Plaintiff has superior qualifications for police work and as a Police Department

Administrator. She holds a Bachelor Degree , a Masters Degree and has accumulated several hours towards a Ph.D. in Psychology. The Plaintiff has attended many police schools and training seminars. For the last ten (10) years, the Plaintiff has received superior evaluations for her work as a Dallas Police Officer and a Dallas Police Department Administrator. In the Spring of 2004, the Plaintiff attended an F.B.I. School for police administrators and she was honored as a person with superior qualifications and was awarded with a letter of commendation by the F.B.I. Director.

8. In the early 90's, a significant number of officers and supervisors in the Narcotics Division realized that there was lax supervision and lax procedures as well as a practice of ignoring or overlooking misconduct. Because of this atmosphere, many officers believed that it was acceptable for officers to misappropriate funds. This attitude was in part due to the fact that the officers in the Narcotics Division had access to millions of dollars in cash and without effective supervision it was relatively easy to divert funds. Because the procedures for the expenditure of funds were lax and the procedures in place were ignored, officers in the Narcotics Division took advantage of the opportunity and misappropriated funds intended for Narcotics enforcement. Supervisors in the Narcotics Division turned a blind eye towards this police corruption and in many instances participated in the corruption. Two times in the 1990's, once in 1992 and once in 1998, top Police Department Administrators were made aware of the dishonesty in the Narcotics Division but on both occasions no actions were taken to correct these problems.

9. At or near the time that Terrell Bolton assumed the role of Police Chief in November 1999, Bolton became aware of the corruption in the Police Department's Narcotics Division. Instead of taking steps to bring these problems to light, Bolton elected to keep them quiet and to cover them up. In the late Summer to early Fall of 2001, after Bolton was given knowledge that over a dozen

persons had been falsely arrested and prosecuted for narcotics related offenses, when the alleged drugs these persons were accused in criminal proceedings of possessing and/or selling, were not drugs at all. Bolton took several steps to cover up the real source of these problems and to prevent the individuals responsible for these illegal arrests and prosecutions from being discovered, investigated or prosecuted. All of these acts were taken without the Plaintiff's approval, prior knowledge or participation.

10. Shortly after his appointment as Police Chief, Bolton, in November 1999, selected and appointed the Plaintiff as an Assistant Chief. Bolton placed the Narcotics Division under the Plaintiff's indirect supervision along with numerous other administratively unrelated police functions. Bolton appointed the Plaintiff as the Assistant Chief over the Narcotics Division knowing that the Plaintiff had no experience in matters related to Narcotics enforcement. Bolton kept the power of transfer of personnel and the assignment of personnel to the Narcotics Division to himself. Without input from the Plaintiff, Bolton placed John Ferguson directly over the Narcotics Division. At that time, Ferguson was a Deputy Chief. Ferguson's assignment was intended by Bolton to keep the Plaintiff in the dark as Ferguson did not like the Plaintiff, and Ferguson had motives to cover up Narcotics Division misconduct. Ferguson had also sued the City of Dallas contending that the Plaintiff should not have been appointed to Deputy Chief before him. Because of these factors, Ferguson was the least likely person to apprize the Plaintiff of any Narcotics Division problems. Ferguson had been a Captain-Supervisor in the Narcotics Division in 1998 when a report critical of the Narcotics Division was presented to Internal Affairs. Subsequent this report, Ferguson was transferred by former Police Chief Click to head the Internal Affairs Division whereupon Ferguson was permitted to "investigate" and then ignore the 1998 report of Narcotics Division misconduct.

11. Even though the Plaintiff was on paper responsible for the Narcotics Division, Bolton effectively created conditions and circumstances that prevented and obstructed the Plaintiff's actual supervision over the Narcotics Division. This Plaintiff's effective lack of supervisory power over the Narcotics Division became evident to her at the beginning of her tenure as Assistant Chief. Between December 1999-2003, when the Plaintiff sought to transfer suspicious personnel from the Narcotics Division and to prevent suspicious personnel from being assigned to the Narcotics Division, Bolton overruled each personnel assignment. During the entire period of time that the Plaintiff acted in the role of Assistant Police Chief under Bolton, the Plaintiff's attempted assignment of personnel was repeatedly obstructed by Bolton. On December 5, 2001, the Plaintiff was given an order from Bolton to leave all Narcotics Division matters to him and to not attempt to transfer anyone to or from the Narcotics Division. On December 5, 2001, the Plaintiff had sought to remove five (5) male officers from the Narcotics Division that had been named and were associated with the false arrest and prosecution of persons for the possession and/or sale of fake drugs. Bolton adamantly and repeatedly refused to remove any suspected officer from the Narcotics Division.

12. As the public and press became increasingly aware that Dallas Police officers associated with the Narcotics Division were probably guilty of several acts of misconduct, several officers and supervisors associated with the Narcotics Division problems came under official scrutiny. All of those associated with the developing scandal refused to aid the investigation and have instead resorted to the use of the Fifth Amendment to prevent their testimonial implication in the Narcotics Division misconduct and scandal. Former Police Chief Bolton, former Narcotics Division head, John Martinez, as well as Narcotics Division Supervisors, Lt. Bill Turnage, Sgt. Jack Gouge (all

males) and others have resorted to the use of the Fifth Amendment. Unlike these individuals, the Plaintiff has not asserted the Fifth Amendment nor has the Plaintiff done anything illegal that would require the Fifth Amendment protection.

13. Throughout his tenure as Police Chief, Bolton took several steps designed to obstruct and/or prevent investigations into Narcotics Division matters. Bolton selected persons to head internal and public integrity investigations that were not really designed to investigate anything. When evidence began to build against the guilty Narcotics Officers, Bolton took public and private steps to assert their innocence. Bolton removed the Plaintiff from having any responsibility over the Internal Affairs Division and designated himself as the titular head over all Internal Affairs investigations.

14. For numerous reasons, in July 2003, Bolton was fired by the Dallas City Manager from the position of Police Chief. Because Bolton was the first African-American person to hold the office of Police Chief, for political reasons Randy Hampton, also an African-American, was designated to act as acting Dallas Police Chief after Bolton's termination. As soon as Hampton assumed the role of "acting Police Chief," Hampton took steps to attempt to insure his selection as the Dallas Police Chief. To solidify his hold on the office of Police Chief, Hampton attempted to force the Plaintiff from the office of Assistant Police Chief. Among the acts of discrimination that took place against the Plaintiff, Hampton attempted to force the Plaintiff to accept a demotion, deprived the Plaintiff of a take home automobile while the Plaintiff was out of town attending an F.B.I. seminar while similarly situated males were not deprived of an automobile, and attempted to block the Plaintiff's attendance at the F.B.I. school in favor of a male he selected. The Plaintiff was partially successful at preventing these discriminatory acts by Hampton. When Hampton was not

selected as Police Chief in favor of Kunkle, the Plaintiff attempted to achieve a correction of Hampton's acts of discrimination, but Kunkle refused. In order to achieve the office of Police Chief, Kunkle, to mollify the African-American community and African-American City council members, agreed to keep Hampton as his second in command. This is in spite of the fact that Hampton is not qualified to be a Police Administrator and Hampton played a key role in Bolton's cover up of Narcotics Division misconduct. From August to September 2001 until early 2005, the Internal Affairs Division of the Dallas Police Department has not investigated any Dallas Police officer for misconduct.

15. Belatedly, on December 5, 2003, over two years after the Narcotics Division misconduct was revealed, the Mayor and Council for the City of Dallas pressured the City Manager to hire two lawyers to investigate the Narcotics Division problems. This "investigation" culminated in a report that was issued on October 24, 2004. This report primarily focused its attention on two Police officers involved in the false arrests, etc. involving the use of the fake drugs. The final report is essentially accurate but failed to place supervisory responsibility on specific supervisory personnel. Unfortunately, for the Plaintiff, members of the Dallas City Attorney's office partially obstructed any effort at placing supervisor responsibility. In interviews conducted by the members of the investigation, the Plaintiff was instructed, most probably improperly, by the City Attorney's office to not volunteer information and to confine her answers to the questions that were asked of her. For example: when asked if she informed Bolton of the first report of misconduct related to fake drugs she received on November 30, 2001, the plaintiff honestly replied that on that date she had not personally informed Bolton. The Plaintiff had followed the City Attorney's instructions and did not volunteer that it was not necessary for the Plaintiff to inform Bolton of any Narcotics Division

misconduct and/or problems because Bolton was fully aware of the problems as he had been in personal, daily contact with Narcotics Division personnel. Bolton was in daily contact with the Narcotics Division Lt. Bill Turnage and several others in the Narcotics Division. Because of these contacts, Bolton had been made fully aware of the source of the developing fake drug scandal. In spite of Turnage's acts of misconduct in failing to supervise the Narcotics Division, Bolton promoted Turnage to the rank of Deputy Chief in mid-October 2001. To divert attention away from the brewing scandal, Bolton in October 2001, without the Plaintiff's prior knowledge or participation, arranged for a departmental award to be given to the officer who was the one most responsible for the fake drug scandal and dishonest conduct, Mark De La Paz.

16. Because the Plaintiff did not volunteer information about Bolton's involvement and knowledge as she was instructed to do by the City Attorney, the Panel falsely drew the conclusion that she was reluctant to investigate Narcotics Division misconduct. To her detriment, the Plaintiff was ill served by the City of Dallas and the City Attorney's office.

17. On November 22, 2004, the Plaintiff was demoted in rank from Assistant Chief to Lieutenant. Kunkle told the press and public as follows:

> To All Departmental Personnel:
>
> Effective immediately, Assistant Chief Dora A. Saucedo-Falls will be removed from her appointed rank to her civil service rank of Lieutenant. Deputy Chief John Martinez will retire from the Department on December 14, 2004. This action is being taken in response to the failure of properly overseeing and supervising the actions of officers assigned to Narcotics Division during the fake drug scandal.
>
> The fake drug scandal resulted in significant harm to innocent citizens and seriously damaged the credibility and reputation of the Dallas Police Department. As concluded by the Independent Investigative Panel, the DPD Narcotics Division failed to observe and react to strong warning signs. It is clear that a lack of proper supervision at every level was a contributing factor to the incident.

It is vitally important that the Dallas Police Department takes necessary and prompt action to restore public confidence. One of these actions is to assure the public that the Department demands accountability from its supervisors at all levels. The removal of this high-ranking individual from an appointive rank is a strong statement that the Department will not tolerate supervisory inaction and responsibility for the performance of subordinates is considered an indispensable duty.

In another personnel-related action, Deputy Chief Daniel A. Garcia will be promoted to Assistant Chief and will command the Patrol Bureau Central.

Issued by: David M. Kunkle, Chief of Police

18. After David Kunkle became Police Chief, instead of taking administrative steps to investigate, punish or terminate individual supervisors for their misconduct, Kunkle has permitted each of these individuals to remain on the job or to retire without criticism or penalty. Kunkle, since becoming Police Chief, has determined that as soon as the most prominently named individuals, i.e. David Larsen, Mark De La Paz and Eddie Herrera, are tried and punished that no male responsible for supervisory misconduct will be punished or reprimanded.

19. The Plaintiff is the only innocent supervisor among an all male cast of individual supervisors who are associated with Narcotics Division misconduct.

20. Defendant the City of Dallas and/or Defendant Kunkle's discriminatory treatment against the female Plaintiff is evidenced by the following acts:

A. The Plaintiff was replaced as Assistant Chief with a male named Daniel Garcia. Garcia at the time of his appointment to Assistant Chief had been investigated by Internal Affairs and had been administratively pronounced guilty by the Internal Affairs Division of lying under oath during an administrative hearing. Kunkle had not received the report of the Internal Affairs investigation results when he hastily announced Garcia's appointment to Assistant Chief. Kunkle, when he was belatedly

advised of the existence of the Internal Affairs Report, without evidence or justification, pronounced Garcia not guilty. Unlike Garcia, the Plaintiff was not given an opportunity to be found not guilty or presented with any charges or to defend herself against the false claim that she was responsible for the "fake drug" scandal. The Plaintiff as a female is entitled to the same treatment as her male replacement and her male counterparts.

B. During the time the Plaintiff was either an Assistant Chief or Deputy Chief, she was never punished while Garcia received summary discipline twice.

C. Deputy Chief John Martinez was permitted to retire as an Assistant Chief and was permitted to leave with full pay and retirement "honors" on December 14, 2004. The Plaintiff was not permitted to have the same opportunity.

D. When Terrell Bolton, a male, was terminated from the Office of Police Chief, Bolton was permitted to have a hearing to publicly clear his name. The Plaintiff, a female, requested such a hearing but was denied this opportunity.

E. Male supervisors, Deputy Chief and former Lt. David Elliston, Sgt. Jack Gouge, Deputy Chief and former Lt. Craig Miller, Captain Jack Bragg and Assistant Chief Tom Ward are guilty of supervisory misconduct in relation to Narcotics Division issues and matters and have been permitted to retain their positions without public criticism or reduction in rank in the Dallas Police Department while the Plaintiff, who is not guilty of supervisory misconduct, has been demoted. Additionally, male supervisors Deputy Chief William Turnage, Deputy Chief John Martinez and Deputy Chief John Ferguson were all permitted to retire with full benefits without public

criticism or reduction in rank.

21. Plaintiff sues the Defendants for violations of the Fourteenth Amendment to the United States Constitution in that the Plaintiff has been denied liberty and property interests in that she has been deprived of an opportunity to clear her name of the public stated reason for her demotion and the Plaintiff sues the Defendants for depriving her of equal protection under the law because of her sex, female.

22. The Plaintiff has suffered damages in an amount of not less than $50,000.00 for pain, suffering, mental anguish, and the loss of compensatory damages as provided for by 42 U.S.C. § 1983. The Plaintiff sues for all appropriate relief under 42 U.S.C. §1983 against all the Defendants and against the individual Defendants David Kunkle and Randy Hampton, the Plaintiff seeks punitive damages.

23. Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff prays that this Court:

1. Assume jurisdiction of this cause;
2. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 that the acts and omissions of Defendant deprived Plaintiff of her rights guaranteed by the Constitution and laws of the United States;
3. Grant to Plaintiff a trial by jury;
4. Pursuant to the provisions of 42 U.S.C. § 1983, award the Plaintiff a judgment against each Defendant for all legal and appropriate damages including punitive damages against David Kunkle and Randy Hampton;
5. Award the costs of prosecution of this action to Plaintiff;

6. Award to Plaintiff from the Defendants the reasonable and necessary attorney's fees for the prosecution of this action; and

7. Award to Plaintiff such other additional or alternative relief as may appear to the Court to be proper.

Respectfully submitted,

THE LAW OFFICE OF DOUGLAS R. LARSON
410 W. Main Street, Suite 101
Mesquite, Texas 75149
(972) 329-0160
TELEFAX: (972) 329-6150

By:____________________
Douglas R. Larson
State Bar No. 11958000

ORIGINAL

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Dora Saucedo-Falls

**DEFENDANTS**
David Kunkle, Randy Hampton, and the City of Dallas, Texas

(b) County of Residence of First Listed Plaintiff: Ellis
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Douglas R. Larson, 410 W. Main Street, Suite 101,
Mesquite, Texas 75149 (972) 329-0160

Attorneys (If Known)
3-05CV0730-N

RECEIVED
APR 14 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☒ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:

Brief description of cause: Damage claim under 42 U.S.C. Section 1983

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE ______ DOCKET NUMBER ______

DATE: 4-14-05

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______