IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DORA SAUCEDO-FALLS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-0730-N |
| | § | |
| DAVID KUNKLE, RANDY HAMPTON | § | |
| and THE CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses Defendants David Kunkle, Randy Hampton, and the City of Dallas's ("the City") Motion for Summary Judgment [22]. Because the Court determines that Plaintiff Dora Saucedo-Falls did not have a liberty or property interest at issue, her due process claims fail. With respect to Saucedo-Falls's Title VII claims[1], the Court concludes that Falls has failed to raise a genuine issue of material fact. Accordingly, the Court grants the Defendants' Motion for Summary Judgment.

### I. THE EMPLOYMENT DISPUTE

This case arises out of Saucedo-Falls's employment with the Dallas Police Department. In November 1999, former Chief of Police Terrell Bolton ("Bolton") selected Saucedo-Falls as an Assistant Chief, formally appointing her as supervisor of the Narcotics

---

[1]Saucedo-Falls also makes Section 1983 claims that her Fourteenth Amendment right to equal protection of the laws was violated. The analysis of these claims is identical to the analysis of her Title VII claims. *Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir. 1998). For clarity and to prevent redundancy, the Court considers only the Title VII claims.

ORDER – PAGE 1

Division. During her tenure, the public and officials became increasingly aware of police misconduct within the Narcotics Division.[2] The "fake drug scandal" culminated in the firing of Chief of Police Bolton, the arrest and conviction of Narcotics Division police officers, and a report conducted by the Independent Investigative Panel (the "Panel").

Randy Hampton served as interim Chief of Police before being replaced by David Kunkle. Saucedo-Falls complains of discriminatory acts allegedly committed by Hampton during his time as Chief of Police. Specifically, Saucedo-Falls claims that Hampton (1) attempted to force her to accept a demotion, (2) deprived her of a take home automobile while similarly situated males were not deprived of an automobile, and (3) attempted to block her attendance at the F.B.I. school in favor of a male he selected.

Chief Kunkle replaced Hampton in June 2004. The following month, he began the reorganization of his supervisory staff by removing three members. Saucedo-Falls was not one of those removed. In October 2004, the Panel released its report to the public. It described Saucedo-Falls as "reluctant" to investigate police misconduct. The following month, Chief Kunkle informed Falls that she would no longer be an Assistant Chief, and that she was being returned to her prior civil service rank. Chief Kunkle released the following statement to the public:

---

[2]Saucedo-Falls argues that she was blocked from performing her supervisory duties or from even acquiring information that would alert her to her supervisory duties. In short, Saucedo-Falls argues that she was a mere figure-head, kept in the dark and given no real powers to confront the problems plaguing the Narcotics Division. Those arguments are largely irrelevant.

> Effective immediately, Assistant Chief Dora A. Saucedo-Falls will be removed from her appointed rank to her civil service rank of Lieutenant. Deputy Chief John Martinez will retire from the Department . . . . This action is being taken in response to the failure of properly overseeing and supervising the actions of officers assigned to Narcotics Division during the fake drug scandal.
>
> The fake drug scandal resulted in significant harm to innocent citizens and seriously damaged the credibility and reputation of the Dallas Police Department. As concluded by the Independent Investigative Panel, the DPD Narcotics Division failed to observe and react to strong warning signs. It is clear that a lack of supervision at every level was a contributing factor to the incident.
>
> It is vitally important that the Dallas Police Department takes necessary and prompt action to restore public confidence. One of these actions is to assure the public that the Department demands accountability from its supervisors at all levels. The removal of this high-ranking individual from an appointive rank is a strong statement that the Department will not tolerate supervisory inaction and responsibility for the performance of subordinates is considered an indispensable duty . . . .

Saucedo-Falls then requested a name clearing hearing, which the Dallas Police Department denied. Saucedo-Falls claims that the denial of a name clearing hearing violates her Fourteenth Amendment right to due process. She also claims that, in violation of Title VII, she was demoted and denied a name-clearing hearing because she was a female.[3]

Saucedo-Falls further argues that the City is liable for the constitutional violations committed by Hampton and Kunkle, and she seeks punitive damages. Defendants deny that

---

[3] In her Response to the Motion for Summary Judgment, Saucedo-Falls introduces the claim that Chief Kunkle demoted Saucedo-Falls in retaliation for her having filed a discrimination claim against former Chief Hampton almost one year before. Because the retaliation claim is outside the pleadings, the Court need not consider it.

any constitutional or Title VII violations have occurred. Hampton and Kunkle also assert the defense of qualified immunity.[4]

## II. SAUCEDO-FALLS'S DUE PROCESS CLAIM FAILS

To prevail on a claim for the deprivation of due process, Saucedo-Falls must establish that she was deprived of (1) a life, liberty, or property interest and (2) that there were constitutionally inadequate procedures protecting that interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 541 (1985). Because Saucedo-Falls cannot establish that she had a life, liberty, or property interest, her argument falters at the first step.

Saucedo-Falls argues that she had two protected interests, either of which would have afforded her a right to a name-clearing hearing. First, she argues that she was not an at-will employee and thus had a property interest in her employment as an Assistant Chief. If so, then she could have only been terminated if she was afforded due process. *Gilbert v. Homar*, 520 U.S. 924, 928 (1997). Due process could consist of a post-termination hearing, *id.* at 929, during which, Saucedo-Falls implies, she may have had a chance to clear her name. Second, she argues that, because she was defamed in conjunction with her demotion, she had a liberty interest in her reputation that entitled her to a name clearing hearing. Both of these arguments fail.

---

[4]Saucedo-Falls's brief in opposition generally does not discuss the facts in any detail in connection with her various legal theories. The Court is thus left to speculate which facts she claims support which legal theories. Rather than holding that arguments were waived, the Court has made its best efforts to attach the correct factual contentions to the appropriate legal theory.

### *A. Saucedo-Falls Was Not Deprived of a Property Interest*

The Fifth Circuit has clearly decided that a property interest is not involved when an Assistant Chief of the Dallas Police Department is removed and returned to her prior civil service rank. *Muncy v. City of Dallas, Texas*, 335 F.3d 394 (5th. Cir. 2003). The Court noted that "a property interest is not incidental to public employment, instead it must be created by an independent source, such as state law." *Id.* at 398. It determined that none of the law cited by the plaintiffs rebutted the Texas state law presumption that employment of an Assistant Chief is at-will. *Id.* at 398-400. The Court based its holding, in part, on Chapter XII, Section 5 of the Dallas City Charter. That section states:

> If the chief of the police department, or any assistant above the rank and grade of captain, was selected to that position from the ranks of the police department and is removed from that position on account of unfitness for the discharge of the duties of the position, and not for any cause justifying dismissal from the service, the chief or the assistant shall be restored to the rank and grade held prior to appointment to the position, or reduced to a lower appointive rank.

The *Muncy* Court noted that Section 5 "contemplates that high level officials will be removed from time to time, and in those instances in which the removal is not for cause warranting dismissal, then the official will be reassigned within the department." *Muncy*, 335 F.3d at 399. In other words, as long as an Assistant Chief is reassigned to her prior civil service rank, removal is not a deprivation of a property interest. The Fifth Circuit reaffirmed this holding in *Bolton v. City of Dallas*, 472 F.3d 261 (5th Cir. 2006). The Court explained that the *Muncy* construction made sense:

> The [executive level] is a political position, and [an individual] might be removed for any number of reasons beyond his control. Through this charter

ORDER – PAGE 5

> provision, Dallas is ensuring officers with considerable length of service that accepting an unstable job will not force them to forfeit their long tenure with the [Dallas Police Department]. It reflects a balance between the city's interest in attracting high quality applicants and its interest in ensuring effective oversight of the officers who fill executive positions.

*Bolton*, 472 F.3d at 265. Saucedo-Falls's arguments fall before this well settled law. Saucedo-Falls refers the Court to Chapter XVI, Section 11(a) of the City Charter, a section that was also considered by the *Muncy* Court. 335 F.3d at 399. The lynchpin of her argument is that section 11(a), despite the *Muncy* Court's finding otherwise, does not apply to Assistant Police Chiefs. That section provides in pertinent part:

> Any classified or unclassified officer or employee may be removed, laid off, or reduced in grade by the city manager . . . . The discharged or reduced officer or employee shall have the right to demand a public hearing upon the charges . . . . This right of appeal does not apply to departmental directors, assistant department directors, and other managerial personnel designated by the city counsel.

If the court understands Saucedo-Falls correctly, she offers a strained reading of that section. She reads "designated by the city counsel" to modify "department directors, assistant department directors, and other managerial personnel," rather than only "other managerial personnel." Furthermore, she interprets "designated" to mean something like *created*, so that section 11(a) distinguishes departments that were created by the city counsel from departments that were created by the City Charter. Thus, she argues, the Police Department, belonging to the latter category, is not affected by the last sentence in section 11(a); managerial personnel in the Police Department, according to Saucedo-Falls, are entitled to an appeal and a hearing when facing demotion.

The Court rejects Saucedo-Falls's reading of section 11(a) as counterintuitive and contrary to well-settled law. *Munch* and *Bolton* have firmly established that Assistant Chiefs in the Dallas Police Department are not deprived of an employment interest when they are returned to their prior civil service ranks.

### *B. Saucedo-Falls Was Not Deprived of a Liberty Interest*

To prevail on her argument that she was deprived of a liberty interest, Saucedo-Falls must show: (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) she was not provided notice or an opportunity to be heard prior to discharge; (5) the charges were made public; (6) she requested a hearing to clear her name; and (7) the employer denied the request. *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006). A demotion may be equivalent to a "discharge" if "it constitutes such a change of status as to be regarded essentially as a loss of employment." *Moore v. Otero*, 557 F.2d 435, (5th Cir. 1977).

Saucedo-Falls's demotion from Assistant Chief to Lieutenant is not "essentially . . . a loss of employment," and Saucedo-Falls makes no argument otherwise. Because Saucedo-Falls was not discharged, she was not deprived of a liberty interest. The Court need not decide whether Chief Kunkle's public statement was "stigmatizing." *See Bledsoe*, 449 F.3d at 653 (explaining that damage to reputation alone, unaccompanied by discharge, does not trigger the protections of due process).

### III. SUMMARY JUDGMENT STANDARD IN TITLE VII CASES

Rule 56(c) provides that the party moving for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988). The Court is to accept the nonmovant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. In making its decision, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Additionally, the Court must follow the burden-shifting analysis presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies to employment discrimination claims where, as here, the plaintiff provides only circumstantial evidence to support her claims.[5] *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir.

---

[5] Saucedo-Falls makes passing reference to what might arguably be "direct evidence" of discriminatory behavior by former Chief Hampton. If Saucedo-Falls produces direct evidence of discrimination, the *McDonnell* test is inapplicable. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* at 310. Saucedo-Falls claims that Hampton berated Saucedo-Falls, repeatedly referring to her as "woman" rather than by her rank or name. Such activity, as the plaintiff has described it, is not itself sufficiently serious or pervasive to be actionable under Title VII. *See Faragher v. City of Boca Raton*, 524, U.S. 775, 787-88 (1998). Saucedo-Falls does not argue that it is "direct evidence" of discriminatory animus. *See Rachid*, 376 F.3d at 310 n.6 (treating evidence as indirect because the plaintiff did not argue that it was direct). Furthermore, even if the

ORDER – PAGE 8

2001). Under this analysis, Saucedo-Falls must first establish a prima facie case, which gives rise to the presumption that the Defendants acted with discriminatory intent. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07. The Defendants may then rebut this presumption by providing a legitimate, nondiscriminatory reason for the underlying action. Once the Defendants produce such a reason, the presumption raised by the prima facie case disappears completely, and the only relevant question is whether the Defendants intentionally discriminated against Saucedo-Falls. At this point, the burden again rests with Saucedo-Falls to produce sufficient evidence to create a genuine issue of fact that either: (1) the Defendants' proffered reason for their action is not true, but is instead pretext for discrimination, or (2) the Defendants' reason, though true, is only one of the reasons for their conduct and that another "motivating factor" was Saucedo-Falls's gender. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

### IV. SAUCEDO-FALLS FAILS TO ESTABLISH A PRIMA FACIE CASE AGAINST HAMPTON

In order to establish a prima facie case of gender discrimination under Title VII, Saucedo-Falls must show that: (1) she belongs to a protected class; (2) she was qualified for the job that she held; (3) she was discharged or otherwise suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the protected class

---

evidence could be characterized as direct, it does not relate to any adverse employment action Saucedo-Falls ultimately objects to – her demotion. Hampton, supervising her for close to a year, did not demote her, nor is there any suggestion that he played a role in demoting her. Chief Kunkle, five months after replacing Hampton, demoted Saucedo-Falls. With respect to her demotion, there is absolutely no direct evidence of discriminatory intent. Accordingly, the Court proceeds with the *McDonnell* test.

more favorably. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

The Fifth Circuit has a "strict interpretation" of what constitutes an adverse employment action in the discrimination context. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004). Adverse employment actions are defined as "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting and compensating." Given such a "strict interpretation," the actions taken by former Chief Hampton cannot be classified as adverse employment actions. According to Saucedo-Falls, Hampton *attempted* to force her to accept a demotion and *attempted* to prevent her from attending an F.B.I. training school. Even if Hampton had succeeded in these efforts, they would not have qualified as adverse employment actions; Saucedo-Falls's claims miss the mark even more, given that they failed.

Saucedo-Falls also alleges that Hampton deprived her of a take home automobile while similarly situated males were not so deprived. Even if this could classify as an adverse employment action, Saucedo-Falls has failed to show that there were any males similarly situated and more favorably treated. Hampton explains that Saucedo-Falls was deprived of a take home vehicle because city policy mandated that vehicles could not be taken home if a person resided outside of a twenty-five mile radius. He claims to have evenly applied this policy, and Saucedo-Falls makes no argument that the alleged discrimination was anything more than a simple and neutral application of standard city policy.

### V. SAUCEDO-FALLS'S GENDER DISCRIMINATION CLAIMS AGAINST KUNKLE FAIL

Saucedo-Falls cites three separate actions taken by Chief Kunkle that she argues constitute unlawful gender discrimination. The Court concludes that, with respect to each action, Saucedo-Falls falters under the *McDonnell* test either by failing to establish a prima facie case or by failing to raise a genuine issue of fact as to whether Kunkle's explanation is pretext for discrimination.

First, the fact that Chief Kunkle permitted John Martinez, a male supervisor in the Narcotics Division, to retire rather than be demoted, does not raise a genuine issue of material fact as to whether Chief Kunkle unlawfully discriminated on the basis of gender. Specifically, even if she has established a prima facie case, Saucedo-Falls has not attempted to establish that Chief Kunkle's explanation for the alleged disparate treatment is pretext. Chief Kunkle explains that he called Martinez into his office to notify him of his demotion, but Martinez notified Chief Kunkle of his intent to retire before he could do so. City retirement rules precluded Chief Kunkle from preventing Martinez's retirement. In contrast to Martinez, Saucedo-Falls did not express any interest in retiring. If she had, Chief Kunkle would not have been able to prevent her from retiring. *See* Defendants' Appendix 79. Saucedo-Falls has not offered any objections to this account and has thus failed to raise a genuine issue of material fact as to whether Chief Kunkle's explanation is pretext for discrimination.

Second, the fact Saucedo-Falls did not have access to a name-clearing hearing while former Chief Bolton did does not establish a prima facie case of gender discrimination.

Specifically Saucedo-Falls has not demonstrated that Chief Bolton was a similarly situated male treated more favorably.[6] In fact, he was neither similarly situated nor more favorably treated. Bolton was not treated more favorably because, while Saucedo-Falls was demoted, Bolton was completely discharged and not allowed to return to his prior civil service rank. Bolton was not similarly situated because he was in charge of, and had ultimate responsibility for, the Police Department that was freshly suffering through the fake drug scandal. Saucedo-Falls's position was less public, and Kunkle demoted her long after the police misconduct came to light. Because Bolton was neither similarly situated nor more favorably treated, the denial of a name-clearing hearing does not establish a prima facie case of gender discrimination.

Third, the fact that Saucedo-Falls's male colleagues, including her replacement, were either promoted or allowed to retain their positions while she was demoted does not raise a genuine issue of material fact as to whether Chief Kunkle discriminated on the basis of gender. Saucedo-Falls regards the disparate treatment as particularly discriminatory because her male colleagues were, according to Saucedo-Falls, actually guilty of supervisory misconduct in relation to the fake drug scandal. In fact, Saucedo-Falls dedicates a great deal of her efforts in this case to the claim that these other individuals are responsible for the fake

---

[6]The Court liberally assumes that Saucedo-Falls's has established the other contested element of her prima facie case, i.e., denial of a name clearing hearing is an adverse employment action.

drug scandal and that she was blameless.[7] The Court assumes, *arguendo*, that her claim is true and that she has established a prima facie case of gender discrimination. Nonetheless, Saucedo-Falls fails to raise a genuine issue of fact as to whether Chief Kunkle's explanations for demoting her are pretext for discrimination.

Chief Kunkle's first reason for demoting Saucedo-Falls's, as stated in the press release announcing her demotion, was that "[i]t is vitally important that the Dallas Police Department takes necessary and prompt action to restore public confidence. [Demoting Suacedo-Falls] is to assure the public that the Department demands accountability from its supervisors at all levels." Chief Kunkle demoted Saucedo-Falls, the highest level supervisor of the Narcotics Division, in order to "restore public confidence." Saucedo-Falls has not challenged this explanation.[8]

Chief Kunkle's second explanation is that he lost confidence in Suacedo-Falls, the highest level supervisor of a scandalized Narcotics Division, to be an effective manager and leader. Chief Kunkle similarly lost confidence in the ability of the second highest level supervisor of the Narcotics Division, John Martinez, to be an effective manager and leader.

---

[7] It is apparent that Saucedo-Falls does not fully appreciate the fact that these arguments are largely irrelevant. Her pleadings and affidavit are replete with arguments that the Panel and her employer are under the false impression that she is partly responsible for the fake drug scandal. Unfortunately, because she does not have an interest protected by due process, and because having a false impression is not discriminatory, this Court is not a forum for her alternative explanations of the fake drug scandal.

[8] Her only argument appears to be that she did nothing wrong and, therefore, her demotion *should not* restore public confidence. This argument is unrelated to the issue in a Title VII gender discrimination claim: is the proffered reason for the adverse employment action pretext for gender discrimination?

He sought to demote both of them. Saucedo-Falls has made no challenge to Chief Kunkle's explanation that he lost confidence.[9]

Because, with respect to each act that Saucedo-Falls argues is discriminatory, she has either failed to established a prima facie case or has failed to raise a genuine issue of fact as to whether Kunkle's explanations are pretext for discrimination, her Title VII claims fail.

## CONCLUSION

Saucedo-Falls did not have a property interest in her employment or a liberty interest in a name-clearing hearing. Additionally, she has failed to raise a genuine issue of material fact as to whether defendants Hampton or Kunkle discriminated against her on the basis of gender. Accordingly, the Defendants are entitled to summary judgment.[10]

Signed October 9, 2007.

_____
David C. Godbey
United States District Judge

---

[9]Her only argument appears to be that she did nothing wrong and, therefore, Chief Kunkle *should not* have lost confidence in her. Again, this argument is unrelated to the relevant issue: whether he did lose confidence in her.

[10]Because the Court has concluded that there were no constitutional or Title VII violations, the Court need not determine whether the City could be held liable for those violations, whether the qualified immunity defense is applicable to Kunkle and Hampton, or whether punitive damages are appropriate.